UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GRANT CLARK WASIK, #13842-025

        Petitioner,

    v.

UNITED STATES OF AMERICA,

        Respondent.

Case No. 3:23-cv-1591-JPG

Criminal No. 3:17-cr-30192-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 1). The Petitioner, Grant Wasik, filed their motion on May 10, 2023. Finding that Wasik has waived his right to collaterally attack his sentence and that the petition is meritless, the Court hereby **DENIES** the Motion.

I.      **BACKGROUND**

    **A. Procedural Background**

On May 23, 2018, a superseding indictment charged Wasik and his two co-defendants with fourteen counts related to wire fraud and conspiracy to commit wire fraud. (Case No. 17-cr-30192, Doc. 31)[1]. Counts two through fourteen were dismissed, leaving only a single count of conspiracy to commit wire fraud. (Crim., Doc. 174). On October 8, 2019, Wasik was sentenced to 125 months imprisonment on Count One of the superseding indictment. (Crim., Doc. 171). On February 10, 2020, Wasik's co-defendants were sentenced to 113 months and 132 months respectively on the same count of the superseding indictment. (Crim., Docs. 219, 224).

---

[1] Unless indicated otherwise, all document references refer to the instant civil case. For ease of reference, citations to documents in Wasik's underlying criminal case shall be denoted as "Crim." followed by the document number.

On May 10, 2023, Wasik filed this habeas petition under 28 U.S.C. § 2255. Wasik argues that his sentence, while not substantively unreasonable at imposition has *become* substantively unreasonable based on his co-defendants' current sentences. (Doc. 1). Wasik argues, due to these apparent "unwarranted sentencing disparities," that his sentence should be "[h]armonize[d]" with his co-defendants. Additionally, Wasik argues that his rights under the Fifth Amendment were violated because at the time of his sentencing he was unaware of the sentence his co-defendants would receive. He has also requested an evidentiary hearing.

Redacted

another co-defendant received a reduction due to ineffective assistance of counsel. (*Id*.). That co-defendant's counsel had a significant issue with alcohol that interfered with his ability to effectively represent his client. (*Id*.). Counsel's ineffectiveness prevented his client from

pleading earlier—which would have reduced his sentence. (*Id.*). Accordingly, Wasik's co-defendant filed a § 2255 petition for ineffective assistance of counsel.

After finding that his co-defendant's counsel was ineffective, this Court placed that co-defendant in the same position he would have been in but for the ineffective assistance. (Doc. 6). Wasik's co-defendant had a minimal criminal history while Wasik has an extensive criminal history. So, from Wasik's perspective, it appeared that his co-defendant received a windfall. In reality, however, his guideline range was lower than Wasik's.

## II.   LEGAL STANDARD

### A.   Appeal Waivers

When a defendant pleads guilty pursuant to a plea agreement, the defendant may agree to a general waiver of appellate rights. An appeal waiver does not bar all appeals. It limits direct appeals to cases where a judge has varied upward from the guideline range and imposed a sentence greater than the statutory minimum. *United States v. Worthen*, 842 F.3d 552, 554 (7th Cir. 2016). Such waivers are only enforceable if they were entered into knowingly and voluntarily:[2] "[a] written appellate waiver signed by the defendant will typically be voluntary and knowing, and thus enforceable through dismissal of a subsequent appeal." *United States v. Galloway,* 917 F.3d 604, 606 (7th Cir. 2019).

To overcome an appeal waiver, a defendant must show that they did not enter the plea agreement voluntarily and willingly, or alternatively, that their sentence is an exceptional situation that violates a statute or their rights. *United States v. Litos*, 847 F.3d 906 (7th Cir.

---

[2] This standard for "knowingly and voluntarily" necessarily requires that a defendant had effective assistance of counsel in negotiating the waiver. If counsel was ineffective at that time, a defendant may attack an appellate waiver on those grounds as well. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). Importantly, this does not apply to all cases of IAC, only allegations that counsel was ineffective while negotiating the waiver. *See Bridgeman v. United States*, 229 F.3d 589, 592-93 (7th Cir. 2000).

2017). Notably, the limitation of appeals to "direct appeals" for specific circumstances also limits collateral attacks under § 2255. Therefore, a § 2255 petitioner who has previously agreed to an appellate waiver must show that the waiver was invalid and prevail on the merits of a § 2255 petition.

### B.  § 2255 Habeas Petitions

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)).

A complete miscarriage of justice is a high bar. The constitutional violation must have resulted in the conviction of an actually innocent person. *Smith v. McKee*, 598 F.3d 374, 387 (7th Cir. 2009). A petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*

In the context of sentencing, so long as a sentence is "well below the ceiling imposed by Congress—whether directly in the statute or by . . . the [Sentencing] Guidelines—[a sentence does] *not* constitute a 'miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706 at 708 (emphasis added). In other words, "as long as a defendant's sentence is within the statutory sentencing range . . . sentencing guideline calculation errors under the advisory sentencing guidelines are non-constitutional and not reviewable in § 2255 proceedings." *Benson v. United States,* 2020 WL 2415697, *2 (S.D. Ill. 2020) (citing *Hawkins v. United States*, 706 F.3d 820, 823-24 (7th Cir. 2013)).

4

It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019). A habeas petition under § 2255 must be filed, inter alia, within one year of a defendant finding "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

### C.  Sentencing Disparities

A sentencing court considers several factors when imposing a sentence. These factors are enumerated in § 3553(a). 18 U.S.C. § 3553(a). Among those factors, sentencing courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Traditionally, the "disparities" mentioned in § 3553(a)(6) referred to sentence disparities between similar defendants on a national and district level. *E.g. United States v. Solomon*, 892 F.3d 273, 278 (7th Cir. (2018)) (summarizing *United States v. Durham*, 645 F.3d 883, 897 (7th Cir. 2011)) (the need to avoid unwarranted disparities under § 3553(a)(6) was "viewed across judges or districts, not co-defendants."). *United States v. Scott*, 631 F.3d 401, 404-05 (7th Cir. 2011).

Now, there is no longer a "categorical bar" on the argument that § 3553(a)(6) applies to sentences between co-defendants. *United States v. Moore*, 50 F.4th 597, 604 (7th Cir. 2022). Sentencing courts may consider possible disparities between co-defendants when imposing a sentence, *United States v. Solomon*, 892 F.3d at 278, (citing *Gall v. United States*, 552 U.S. 38, 54 (2007)), and courts are "open in all cases to an argument that a defendant's sentence is

unreasonable because of a disparity with the sentence of a co-defendant." *United States v. Statham*, 581 F.3d 548, 556 (7th Cir. 2009).

Sentencing is inherently an individualized process; a "district court is required by statute to tailor its sentence to the particular defendant." *Solomon*, 892 F.3d at 279. Therefore, some disparities are inevitable. At first glance, there appears to be some tension between the individualized nature of sentencing and the call to avoid sentencing disparities between co-defendants. However, "§ 3553(a)(6) does not require that defendants in a single case be sentenced to identical prison terms." *United States v. Statham*, 581 F.3d at 556 (7th Cir. 2009). Rather, § 3553(a)(6) only prohibits *unwarranted* disparities. *United States v. Turner*, 604 F.3d 381 (7th Cir. 2010) (citing *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010)) (§ "3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants"). *See also*, *Solomon*, 892 F.3d at 279 (declining "to hold flatly that a sentence cannot become substantively unreasonable based upon a co-defendant's later sentence."). In contrast, "*warranted* disparities are allowed" between co-defendants. *United States v. Pulley*, 601 F.3d at 668 (emphasis added). Thus, when examining disparities, the key question is whether a disparity between two similar co-defendants is warranted or unwarranted.

When determining whether a disparity is warranted, a sentencing court is "neither preclude[d] [from] nor require[d]" to compare defendants' sentences to a "parallel conspiracy—whether before the same or different judges." *United States v. Sanchez*, 989 F.3d 523, 539 (7th Cir. 2021). A sentencing court must show that it *considered* the need to avoid unwarranted disparities and determined that the disparity was warranted given other factors.

Thus, for the purposes of § 3553(a)(6), a disparity between co-defendants is warranted if: (1) a sentencing court adequately considered the need to avoid unwarranted sentencing

6

disparities among co-defendants, and (2) a sentencing court's rationale for imposing a disparate sentence is justifiable.

Correctly calculating the guideline range is sufficient for showing adequate consideration of § 3553(a)(6): "[a] within-Guidelines sentence *inherently* addresses the need to avoid unwarranted disparities" *United States v. Clay*, 50 F.4th 608, 612 (7th Cir. 2022) (citing *Gall v. United States*, 552 U.S. at 54) (emphasis added). Because the Sentencing Commission already considered the need to avoid unwarranted disparities when it created the Guidelines, a sentencing court "implicitly incorporates the United States Sentencing Commission's concerns regarding avoiding unwarranted disparities among similarly situated defendants." *United States v. Prado*, 743 F.3d 248, 252 (7th Cir. 2014). *See also United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017) ("[T]he Sentencing Guidelines are themselves an anti-disparity formula."). Therefore, a sentencing court "necessarily [gives] significant weight and consideration to the need to avoid unwarranted sentencing disparities" when it "correctly calculate[s] and carefully review[s] the Guideline range." *Gall*, 552 U.S. at 54.

When a sentencing court imposes a sentence *below* the Guideline range, "[t]here is a *nearly irrebuttable* presumption that a below-[Guidelines] range sentence is reasonable." *United States v. Seymour*, 94 F.4th 679, 687-88 (7th Cir. 2024) (quoting *United States v. Oregon*, 58 F.4th 298, 302 (7th Cir. 2023)) (emphasis added). This presumption is rebuttable *only* by showing that a sentence fails to comport with the § 3553(a) factors. *Id*. (quoting *United States v. De La Torre*, 940 F.3d 938, 953 (7th Cir. 2019). Notably, the Court of Appeals for the Seventh Circuit has "*never* [*before*] held that a below-Guidelines sentence is unreasonably high." *United States v. Seymour*, 94 at 687-88 (7th Cir. 2024).

Turning to whether a disparity is justifiable, a sentencing court has discretion in how it chooses to weigh § 3553(a)(6) against other sentencing factors. § 3553(a)(6) does not outweigh all other factors at sentencing:

> Avoiding "unwarranted" disparities . . . is not the summum bonum [i.e. the ultimate goal] in sentencing. Other objectives may have greater weight, and the court is free to have its own policy about which differences [between sentences] are "unwarranted."

> *United States v. Bartlett*, 567 F.3d 901, 908-09 (7th Cir. 2009).

Examples of other factors a sentencing court can weigh more heavily are "material differences in the offender's conduct and acceptance of responsibility," *Id.*, level of cooperation. *E.g. Solomon*, 892 F.3d at 273 (citing *United States v. Orlando*, 819 F.3d 1016, 1026 (7th Cir. 2016)) ("disparate cooperation warrants disparate sentencing"), and culpability. While culpability is a factor, there are circumstances where "even . . . the less culpable of co-defendants finds himself staring at the harsher sentence." *Id.* at 279 (citing *United States v. Boscarino*, 437 F.3d 634, 637-38 (7th Cir. 2006)). Therefore, a sentencing court must consider § 3553(a)(6)'s desire to avoid disparities but may weigh other factors more heavily. So long as those other factors are justifiable, any disparity between similar co-defendants' sentences is warranted.

Once a defendant is sentenced, there are multiple ways to shorten their time in prison. The Bureau of Prisons (BOP) has a number of programs that allow defendants to earn time credit. *See e.g.* FED. BUREAU PRISONS, EVIDENCE-BASED RECIDIVISM REDUCTION (EBBR) PROGRAMS AND PRODUCTIVE ACTIVITIES (PA), U.S. DEPT. JUSTICE. When a convict has taken affirmative steps to reduce their time in prison, it would be unjust and unfair to reward a convict with the fruits of another's labors, simply because they are former co-defendants. Additionally, either the BOP or a court may determine that certain extraordinary circumstances warrant a sentence reduction. There may also be legal or factual issues, unique only to one co-defendant or their representation, that also warrant a reduction.

### D.  Right to be Sentenced on Accurate Information

Criminal defendants have a right under the Fifth Amendment to present accurate and reliable information at sentencing. *United States v. Romano*, 825 F.2d 725, 728 (2d Cir. 1987). The Fifth Amendment prohibits defendants from being sentenced on misinformation. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). This right extends to presentation of information to a sentencing court for the purposes of sentencing the defendant, including through a presentence investigation report (PSR).

This right does not apply to the mental impressions a defendant may have about their sentencing or another defendant's sentencing. It does not mean that a defendant has a right to information about their codefendants nor does it mean that a defendant has a right to the mental impressions of a sentencing court.

### III.    ANALYSIS

### A.  Timeliness, Appeal Waiver, & the Fifth Amendment

A § 2255 must be filed within the one-year statute of limitations. The parties do not dispute that Wasik's petition is timely given the basis of his § 2255 are his co-defendants' sentences and his co-defendants' sentences have been adjusted in the last year. Accordingly, the Court finds that Wasik's petition is timely.

Wasik pled guilty pursuant to a plea agreement that included waiver of his appellate rights. This included a waiver of his right to collaterally attack his sentence under § 2255. Given Wasik has not alleged that his entry into the waiver was either unknowing or involuntary, Wasik attacks his appellate wavier on other grounds: he argues that his sentence was imposed in violation of the Fifth Amendment. For that reason, according to Wasik, this is the kind of extraordinary circumstance where his appeal waiver—and the waiver on collateral attacks under

§ 2255—should be set aside.

Wasik states that his Fifth Amendment right to be sentenced according to accurate information was violated when his co-defendants had their sentences adjusted because, at his sentencing, he believed his co-defendants' sentences would be higher than they are now. Had he known his co-defendants' sentences would have been lower or lowered later on, Wasik argues, he would not have entered into the plea agreement. Essentially, Wasik believes he has a Fifth Amendment right to hindsight.

Nonsense.

Wasik's constitutional rights were not violated because the court failed to prophesize the sentence reductions his co-defendants would receive. Courts are neither prescient nor omniscient. A court cannot know how Probation will calculate a defendant's sentence before seeing the PSR. Neither can a court know whether a defendant will receive a reduction after sentencing. When two co-defendants are sentenced by the same court relatively near each other, that court is better able to predict how it may sentence two different defendants—but a disparity between their sentences is not a Fifth Amendment issue unless one of the defendants was sentenced on the basis of inaccurate or false information. Inaccurate information, inter alia, includes errors in the PSR or erroneous factual findings at sentencing. Wasik has failed to point to a single inaccurate fact from his sentencing or the PSR. He has failed to present a prima facie case that his Fifth Amendment rights were violated.

The Fifth Amendment provides a negative right, i.e., a right against being sentenced on false information. Wasik wishes to invert the Fifth Amendment into a positive right, i.e., a right to be sentenced according to his expectations. Defendants are often overly optimistic about what sentences they will receive; the Fifth Amendment does not protect their expectations. Moreover,

even if this Court were to hold that Wasik had a Fifth Amendment "Right to Hindsight," Wasik's sentencing court did not even receive his co-defendants' PSRs until days after it sentenced Wasik. It could not have foretold, divined, nor scried what his co-defendants' sentencing ranges would be.

Furthermore, Wasik pled guilty to the charges long before his sentencing. During his change of plea, Wasik stated—under oath—that he had a college education, understood the nature of the proceedings, and that he was not on any medications or under the influence of any substances that would interfere with his ability to understand the proceedings. (Crim, Doc. 129). Wasik—a competent person of at-least ordinary intelligence—understood the sentencing court's admonishment that sentencing recommendations were advisory. (*Id*.). Wasik was aware that Probation may recommend a different sentence and that the Court may impose whatever legal sentence it saw fit. (*Id*.). Nothing in either the record or the filings indicate a Fifth Amendment violation. Wasik was well-aware that his co-defendants may receive a different sentence. Even if he was not, Wasik's hypotheses on his co-defendants' potential sentences have no bearing on his own constitutional rights under the Fifth Amendment.

### B. Sentence Disparities

Wasik cites *Solomon* and *Clay* for the proposition that a within or below-Guideline sentence can be rendered unreasonable based on sentencing disparities. *United States v. Solomon*, 892 F.3d 273, 278 (7th Cir. (2018)). *United States v. Clay*, 50 F.4th 608, 612 (7th Cir. 2022)

*Solomon* suggested that a previously reasonable sentence could *become* unreasonable for creating an unwarranted sentencing disparity with a co-defendant's sentence. *Solomon*, 892 F.3d at 273. *Clay* stated that a within-guideline range sentence *inherently* avoids disparities. *Clay*, 50

F.4th at 612.

Read together, *Solomon* and *Clay* offer two possible, mutually exclusive interpretations: either *Clay* created an exception to the rule laid out in *Solomon*, or *Solomon* created an exception to the rule laid out in *Clay*. If *Clay* created an exception to *Solomon* then a previously reasonable sentence can become unreasonable, but *never* if the previous sentence was within the Guideline range. Alternatively, if *Solomon* created an exception to *Clay*, then a previously reasonable sentence, even a Guideline sentence—one that *inherently* avoids disparities—can *still become* unreasonable based on a co-defendant's later sentence. Wasik argues for the latter interpretation, that *Solomon* created an exception to *Clay*. (Doc. 1) ("the ordinary rule that a within-guidelines range inherently avoids disparities cannot be true.").

Wasik is mistaken.

First, *Solomon* was decided four years before *Clay*. Therefore, it seems more logical to read *Clay* as creating an exception to *Solomon*, rather than the inverse.

Second, setting aside recency, the Appellate Court and the Supreme Court have both been extraordinarily clear that a within-Guideline range sentence *inherently* and *necessarily* avoids unwarranted sentencing disparities. The word "inherent" was selected for a reason. An aspect is "inherent" to something if it is "involved in [its] constitution or essential [to its] character" *Inherently*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/inherently (last visited Apr. 18, 2024), or if it is "a basic or permanent part of . . . [it] and that cannot be removed." *Inherently*, OXFORD ADVANCED LEARNER'S DICTIONARY, https://www.oxfordlearnersdictionaries.com/definition/english/inherently (last visited Apr. 18, 2024).

Avoidance of unwarranted disparities is "an essential character of" or "a basic or

permanent [irremovable] part of" a within-Guideline range sentence. Even if *Solomon* was more recent than *Clay*, it would be logically inconsistent to hold that a within-Guideline range sentence "inherently" avoids disparities and also hold that a within-Guideline range sentence only avoids disparities under certain conditions. Something cannot be "inherent" if it is also conditional. Just as silver is an inherent, intrinsic part of a silver dollar; avoidance of unwarranted disparities is an inherent, intrinsic part of a within-Guideline range sentence. A within-Guideline range sentence *cannot* create an unwarranted sentencing disparity any more than a true silver dollar can be silver-less. This is why "[c]hallenging a within-range sentence as disparate is a 'pointless exercise.'" *United States v. Sanchez*, 989 F.3d 523, 541 (7th Cir. 2021) (quoting *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012) (per curiam)).

However, Wasik is not endeavoring in the "pointless exercise" of attacking a within-Guideline sentence for creating sentencing disparities. Wasik has taken on the even more difficult task of attacking a *below*-Guideline sentence. He bears an even heavier burden: rebutting the "nearly irrebuttable presumption that a below-[Guidelines] range sentence is reasonable," *United States v. Seymour*, 94 F.4th at 687 (quoting *United States v. Oregon*, 58 F.4th at 302); something that the Court of Appeals for the Seventh Circuit has, in its own words, "never held." *Id*. at 687-88 ("In fact, we have never held that a below-Guidelines sentence is unreasonably high."). To satisfy that burden, Wasik must show that the Court did not comport with the § 3553(a) factors. The only factor Wasik alleges his sentence does not comport with is § 3553(a)(6). Therefore, Wasik bears the burden of showing that the disparities between his sentence and his codefendants' sentences are unwarranted; that there was no justifiable reason for the sentence disparity.

Wasik has failed to meet that burden.

13

1.  <u>Culpability</u>

Wasik claims that his comparative lack of culpability should be dispositive. However, culpability is not the only factor, nor the most important factor, when determining a defendant's sentence.

The sentencing court has discretion to weigh different factors. § 3553(a) demands that courts consider the *individual* history and characteristics of each defendant. There are several circumstances where "the less culpable of co-defendants finds himself staring at the harsher sentence." *United States v. Solomon*, 892 F.3d at 279 (internal citations omitted).

Not only did Wasik's sentencing court have discretion to place more emphasis on other sentencing factors, § 3553(b) allows a court to weigh certain mitigating or aggravating factors more heavily than the Guidelines do. While a court is obliged to consider the need to avoid unwarranted sentencing disparities between similar co-defendants—and culpability is one factor to consider—adequate consideration of possible disparities, supported by justifiable reason for any possible disparity, is sufficient for a disparity to be warranted.

Redacted

Redacted

<div style="border: 1px solid black; text-align: center;">
Redacted
</div>

3.  <u>Criminal History</u>

Another reason Wasik's sentence was greater than his co-defendants was his substantial criminal history. Unlike his co-defendants—who had a minimal criminal history—Wasik's criminal history was extensive. Wasik has invented a theory for why his criminal history should not apply to him.

One of Wasik's co-defendants had ineffective counsel; their attorney was an alcoholic. Due to his attorney's alcoholism, Wasik's co-defendant was unable to change his plea as early as he wanted. Consequently, he was given a longer sentence than he would have received had he pled earlier. Upon a § 2255 petition, the Court found Wasik's co-defendant's counsel ineffective and reduced his sentence accordingly. The reduction placed him in the same position he would have been in had he pled early. His sentence was lower than Wasik's after this reduction because, unlike Wasik, his co-defendant had a minimal criminal history.

Wasik had many DWI's, in addition to other traffic, drug, and alcohol offenses. Wasik claims that these repeated offenses were the result of substance abuse and alcoholism. He argues that alcoholism was the cause of both his own criminal history and the cause of his co-defendant's unjustly higher sentence. Therefore, according to Wasik, if his co-defendant's sentence was reduced, it would be unfair not to reduce Wasik's sentence too.

This is absurd.

There is not even a threadbare connection between Wasik's criminal history and his co-defendant's counsel's ineffective assistance. While both Wasik and his co-defendant's attorney may have suffered from alcoholism, that is where the similarities begin and end. These are not

apples and oranges; they are apples and oysters.

The reasons his co-defendant's attorney was ineffective are wholly and entirely irrelevant to Wasik's criminal history. His co-defendant was entitled to effective assistance of counsel; because of his attorney's alcoholism, he was denied that right. That is why he received a reduction—or more accurately—a correction. The correction *only* restored his co-defendant to the state he would have been in had he been given effective assistance of counsel. Nowhere did the Court excuse counsel's behavior—quite the opposite—nor did his co-defendant receive a windfall from his attorney's ineffectiveness. Had his co-defendant been provided effective counsel from the start, there would have been no need for a correction—the sentence he currently has would have been the sentence he received originally. His co-defendant is in no way responsible for his attorney's ineffectiveness.

Wasik, on the other hand, *is* responsible for his criminal history. Wasik had not one, not two, but *seven* DWI's; in addition to other offenses. There is no "alcoholic exception" to the law and it would be against public policy to excuse a defendant's criminal history simply because they are an alcoholic. Being an alcoholic is not a choice, but driving drunk is. Many people suffer from alcoholism; not all of them put the lives of others at risk by driving under the influence. Being an alcoholic is not an excuse for putting the lives of others in danger. Wasik's attempt to wipe his hands of *any* responsibility for his own conduct is as equally unpersuasive as it is concerning. It demonstrates a fundamental refusal to acknowledge that he is not a helpless victim of circumstance, but responsible for his actions and responsible for the position he finds himself in today. The different criminal histories between him and his co-defendants are more than justified reasons for any sentence disparity that exists.

In summary, Wasik claims he was less culpable than his co-defendants and, accordingly,

17

refusing to reduce his sentence creates an unwarranted sentencing disparity. ███████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████ Unlike his co-defendants, Wasik had an extensive

criminal history. ██████████████████████████████████

███████████████████████████████████████████

██████████████████████████ Therefore, Wasik's arguments are meritless

and unpersuasive.

### C.  Relief Under § 2255

While Wasik may disagree with the Court's weighing of the § 3553(a) factors—

specifically how it weighed culpability—there is no indication of any unwarranted disparities.

However, even if Wasik was able to meet that heavy burden; sentence miscalculations are

usually not cognizable under a § 2255. Relief under § 2255 is available "only in extraordinary

situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental

defect has occurred which results in a complete miscarriage of justice." *United States v.*

*Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (internal quotations omitted).

A miscarriage of justice requires a finding of actual innocence, or a finding that no

reasonable juror would have convicted him. Wasik presents no evidence of his innocence, let

alone enough evidence to show that no reasonable juror would have convicted him. Nor has

Wasik demonstrated that an alleged unwarranted disparity—created by a below-Guideline

sentence—amounts to an error of constitutional or jurisdictional magnitude or that it constitutes a

fundamental defect. *Id*. (a sentence "well below the ceiling imposed by Congress—whether

directly in the statute or by . . . the [Sentencing] Guidelines—[does] not constitute a 'miscarriage

of justice.'").

Moreover, the Court remains unpersuaded that Wasik's claims are cognizable under a § 2255 petition. The case law on sentencing disparities are from cases on direct appeal. There are multiple avenues to dispute the substantive reasonableness of a sentence, even if that sentence was previously substantively reasonable but became unreasonable. However, a § 2255 petition is not the appropriate vehicle for disputing sentencing disparities between co-defendants.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Court hereby **DENIES** Wasik's motion to vacate, set aside, or correct his sentence. (Doc. 1). Because the motion itself and the files and records of the case conclusively demonstrate that Wasik is not entitled to relief, an evidentiary hearing is unnecessary. The Court **DECLINES** to issue a certificate of appealability and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  May 8, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**